FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-11743NMG

|  |  |
|---|---|
| ELLA M. GRAHAM<br>Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| ROBERT ROLLINS<br>Defendant | )<br>)<br>) |
| And | )<br>) |
| THOMAS DAY, SR.,<br>Trustee Defendant | )<br>) |

## AFFIDAVIT OF THOMAS DAY JR.

1. I, Thomas Day, Jr., am a resident of Florida and I hold a Power of Attorney for Robert Rollins.

2. I am and was Robert D. Rollins' (Bob's) closest friend for 42 years.

3. I spoke with Bob on a two to three time basis weekly for the past 16 years.

4. I was his confidant during his divorce proceeding from his former wife. I have also been there as someone who he could talk to since his diagnosis with Parkinson's disease in 1988.

5. I discussed his estate planning with him at various times.

6. Bob became estranged from his two daughters sometime after the

divorce in 1988.

7. In all of my discussions with Bob, he never indicated that he had any agreement to leave one-half, or any portion of this estate to Ella Graham.

8. At no time did Bob relay to me any arrangement as alleged by Ella Graham.

9. Given the nature of our relationship, I know Bob would have told me of any arrangement as alleged by Ella Graham.

10. I was aware that Ella Graham and her daughter were being paid to care for Bob and that at some point Ella Graham had moved into the adjoining apartment.

11. Bob's house was waterfront with beach access. There were two adjoining living areas, each with their own kitchens and separate bedrooms and bathrooms.

12. I was aware from Bob that Ella Graham was putting pressure on Bob to deed the house to her. He told me that had refused.

13. On May 28, 2004, in a phone call to Bob he said that Ella Graham was moving out that evening and stopping all care and was going to abandon him. This was sudden and without notice to find a replacement.

14. I called Ella Graham directly to plead that she continue to care for him until I had time to drive to Wareham from Florida. She moved out her belongings. She did give minimal care until I arrived.

15. When I arrived I found that the care provided to Bob was marginal. His living space was very dirty and disheveled. Bob appeared as though he had been neglected for a long time.

16. When I arrived Ella Graham refused to give me information that I needed to care for Bob, like his Social Security information and medical information.

17. I began taking care of Bob and prepared to move him to Florida where I could better oversee his affairs.

18. I reviewed Bob's bank statements which revealed that Bob had been

signing checks from Bob's account to pay for many of his personal expenses, like telephone, cable, taxes, heating oil, meals, insurance, dog care, electricity.

19. I am aware that Bob had been receiving approximately $850 dollars per month from Social Security which was deposited into his account.

20. I was further aware that since approximately 2003, Bob had other assets that were place into accounts so as to maintain his Mass Health insurance status. He had $9000 dollars in cash in May 2003. In June 2004, there was only $5500 dollars of cash left. He said he had used it to pay taxes, to pay expenses and to give to Ella Graham. Contrary to the statement of Ella Graham, Bob was not impoverished.

21. On June 8, 2004, while I was assisting Bob to prepare to move, Ella Graham came back to the apartment and began a confrontation with Bob. When the Wareham police arrived they had to escort her from the premises.

22. On June 10, 2004, I took Bob to his attorney's office to handle his legal affairs. By that time, Bob had already had his property under agreement for sale and that sale had already fallen through.

23. Bob still intended to sell, but was waiting for a prospective buyer to come forward.

24. After moving in with my wife and me in Florida, I took Bob to a notary to sign a deed for a prospective sale. This was June 24, 2004. I then sent the deed back to Massachusetts to the attorney, just in case the property sold.

25. The sale did not occur until July 6, 2004.

26. The proceeds of the sale have and will be used to care for Bob and for his disease.

27. The statement in Ella Graham's affidavit inferring that I have a drinking problem and that my drinking problem affects Bob is out and out false.

SIGNED under the pains and penalties of perjury this ___ day of September 2004.

_____
Thomas Day, Jr.