FILED
IN CLERKS OFFICE

2004 SEP 24 P 1:50

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-11743NMG

|  |  |
|---|---|
| ELLA M. GRAHAM<br>    Plaintiff | )<br>)<br>)<br>) |
| v. | )<br>) |
| ROBERT ROLLINS<br>    Defendant | )<br>)<br>) |
| And | )<br>) |
| THOMAS DAY, SR.,<br>    Trustee Defendant | )<br>) |

### AFFIDAVIT OF ROBERT ROLLINS

1. I, Robert Rollins, am a resident of Florida and the Defendant in this matter. I am currently 70 years old and suffer from Parkinson's disease.

2. While Parkinson's affects my motor skills and my attention span, I have full mental capacity. I understand this matter and the consequences of this action.

3. I was formerly the owner of property located in Wareham, Massachusetts comprised of two separate living areas (hereinafter the "Property").

4.  From approximately 1999 until May 2004, I employed Ella Graham (hereinafter "Graham") to provide care and services for me.

5.  For approximately the same period of time, I employed Graham's daughter, Paula Gillette, to provide care and services for me.

6.  After each bi-weekly period, Graham and Paula Gillette submitted their time cards to me for service performed.

7.  Each bi-weekly period Graham and Paula Gillette received a check, which included standard withholdings, together with a pay stub for the hours of service billed.

8.  From approximately July 2000 until late May 2004, Graham occupied the separate apartment owned by me.

9.  The property included a water view and beach access, all of which was made available to Graham during her exclusive use and occupation of the apartment.

10. The apartment had a fair market rental value.

11. Graham never paid me for the fair market value rental for her exclusive use and occupancy of the apartment.

12. On numerous occasions, Graham, attempted to pressure me to convey to her the real estate that I received by inheritance.

13. On numerous occasions, she attempted to take advantage of me, despite my debilitated medical condition.

14. Despite the compensation paid to Graham, Graham's care for me was sub-standard, such that I did not receive the level of care for which Graham was paid.

15. I met with my attorney in the summer of 2001 to discuss estate planning, which eventually resulted in the will dated August 13, 2001 attached to the Plaintiff's Complaint;

16. At the first meeting, it was not my intent to leave Ella Graham anything. Only later did I decide to leave one-half to my friend' son and one-half to Ella Graham.

17. At that time, my major concern was the estrangement from my two daughters and my insistence upon removing them from my will.

18. At not time did I ever have any agreement to leave one-half, or any portion of my estate to Ella Graham.

19. In late May 2004, Ella Graham indicated she was going to leave her apartment and was no longer going to care for me. She made no arrangements for my care, but did stay until my friend, Tom Day, arrived.

20. My fiend Tom Day came to my rescue. He provided me with care and eventually helped me to deal with my problems.

21. On June 10, 2004, I met with my attorney at her office, as I was preparing to leave to Florida. At that time, I signed certain legal documents in her office.

22. While the sale of my house fell through in late May/early June 2004, in mid June a possible new buyer came forward.

23. In preparation for a possible closing, I mailed a deed to my attorney in late June.

24. The closing occurred on July 6, 2004.

25. The proceeds of the sale have and will be used to care for me and my disease.

26. I never promised Ella Graham one half of my house.

SIGNED under the pains and penalties of perjury this day of September 2004.

_____
Robert D. Rollins