UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-11743NMG

|  |  |
|---|---|
| ELLA M. GRAHAM <br> Plaintiff | ) <br> ) <br> ) |
| v. | ) <br> ) |
| ROBERT ROLLINS <br> Defendant | ) <br> ) <br> ) |
| And | ) <br> ) |
| THOMAS DAY, SR., <br> Trustee Defendant | ) <br> ) |

## AFFIDAVIT OF ATTORNEY LISA E. MYCOCK

1. I, Lisa E. Mycock, am an attorney licensed to practice law in the Commonwealth of Massachusetts. I am an attorney in the Law Office of Patricia Mello.

2. I am and was Robert D. Rollins' (Bob's) attorney from approximately 2000 until present.

3. I met with Bob in the summer of 2001 to discuss estate planning, which eventually resulted in the will dated August 13, 2001 attached to the Plaintiff's Complaint.

4. My meetings with Bob were outside the presence of Ella Graham. I was able to establish a good rapport with Bob wherein he discussed his private matters openly.

5. At the first meeting, it was not his intent to leave Ella Graham anything. Only after Bob's life-long friend, Tom Day, indicated that he did not

want to take any of the estate, did Bob decide to leave one-half to Tom Day's son and one-half to Ella Graham.

6. At that time, Bob's major concern was his estrangement from his two daughters and his insistence upon removing them from his will.

7. At not time did Bob indicate any agreement to leave one-half, or any portion of this estate to Ella Graham.

8. At no time did Bob relay to me any arrangement as alleged by Ella Graham.

9. Given the nature of our relationship, I would expect that Bob would have told me of any arrangement as alleged by Ella Graham.

10. I was aware, through a real estate broker, that Ella Graham had left Bob's apartment and was no longer caring for him. I was later informed that Bob's long-time friend, Tom Day, had come to Massachusetts to assist his friend.

11. Earlier in 2003, I was aware that Bob had inherited real estate and money from his mother's estate and that these assets could affect his eligibility for Mass Health. As stated in my April 2003 letter, it was necessary for Bob to review and change his estate plan, including gifting, in anticipation of nursing home options. The letter had nothing to do with gifting to avoid Ella Graham.

12. In May/June 2004, Bob Rollins had his property under agreement for sale. The purchase and sale fell through in early June.

13. After that, there was no written agreement for the sale of the real estate.

14. On June 10, 2004, I met with Bob at my office, as he was preparing to leave to Florida. At that time, he signed certain legal documents in my office. I was aware that there was a potential new buyer, but the potential buyer never executed an offer and/or purchase and sale contract.

15. In the late afternoon of June 17, 2004, Attorney Peter Daigle called me regarding his possible representation of Ella Graham. He indicated he was trying to determine whether or not he would represent her in a claim against Bob. He asked me what my take was on the situation.

16. I told him it was my understanding that she had moved out of the home a few weeks before Bob when he refused her efforts to force him to buy a new house in joint names.

17. Peter stated that Ella asserted she had provided uncompensated care to Bob and had also paid household bills from her personal funds.

18. He inquired as to whether the house was due to sell in the near future. I responded that to my knowledge there was no offer or purchase and sale pending at the time, which was the case.

19. Peter indicated he was going away for two weeks and would decide whether or not to make a claim upon his return. His demeanor was that he was still trying to decide whether or not Ella would make a credible Plaintiff.

20. In late June, a possible new buyer came forward.

21. In preparation for a possible closing, I emailed a deed to Bob in Florida on June 24, 2004, which he signed in the presence of a notary and he forwarded to me.

22. The closing occurred on July 6, 2004 at Attorney Steven Pizutti's office.

23. At no time after my conversation on June 17, 2004, did Attorney Peter Daigle contact me with regard to his client's claim.

SIGNED under the pains and penalties of perjury this 22nd day of September 2004.

_____
LISA E. MYCOCK